## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

RICKY W. MANNING,
             Appellant,

DOCKET NUMBER
SF-0752-13-0632-I-2

             v.

DEPARTMENT OF DEFENSE,
             Agency.

DATE: December 20, 2016

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

David P. Clisham, Esquire, San Francisco, California, for the appellant.

Nancy C. Rusch, Esquire, Stockton, California, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

**FINAL ORDER**

¶1      The appellant has filed a petition for review of the initial decision, which sustained charges of conduct unbecoming and making false statements during an investigation, found that he did not prove any of his claims or defenses, and affirmed the removal action. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. We MODIFY the initial decision to discuss the claims of reprisal for whistleblowing activity and harmful procedural error, but we conclude that the appellant did not prove that his disclosure was a contributing factor in the agency's decision to remove him or that the agency committed harmful procedural error. Except as expressly MODIFIED by this Final Order, we AFFIRM the initial decision.

## BACKGROUND

¶2      The agency removed the appellant from his position as a Lead Police Officer based on charges of conduct unbecoming and making false statements during an investigation. *Manning v. Department of Defense*, MSPB Docket No. SF-0752-13-0632-I-1, Initial Appeal File (IAF), Tab 9, Subtabs 4D, 4G. The narrative of the conduct unbecoming charge described how Officer E.R. talked to the appellant about his (Officer E.R.'s) motorcycle's registration status, the appellant attempted on multiple occasions on December 31, 2012, and January 1, 2013, to check Officer E.R.'s registration status through the California Law Enforcement Telecommunications System (CLETS), and the appellant told Officer E.R. to state that his motorcycle was on agency property to support his claim that he had a law enforcement reason to request the CLETS information.

*Id.*, Subtab 4G at 1. The narrative of the making false statements charge described how the appellant made three false statements to the Deputy Chief of Police during a subsequent agency investigation regarding the misuse of CLETS. *Id.* at 1-2.

¶3      The appellant filed a Board appeal and asserted affirmative defenses of a due process violation, violation of the right to representation during the agency's investigation, age discrimination, harmful procedural error, and retaliation for protected whistleblowing activity. IAF, Tabs 1, 20, 24. A 3-day hearing was held. Hearing Transcripts (HTs). The appeal was dismissed without prejudice and refiled. IAF, Tab 29, Initial Decision; *Manning v. Department of Defense*, MSPB Docket No. SF-0752-13-0632-I-2, Appeal File (I-2 AF), Tab 1. The administrative judge issued a lengthy initial decision in which she made several credibility determinations, found that the agency proved both charges and the appellant did not prove any of his claims or defenses, and upheld the removal penalty. I-2 AF, Tab 10, Initial Decision (ID). The appellant has filed a petition for review, the agency has filed a response, and the appellant has filed a reply brief. Petition for Review (PFR) File, Tabs 4, 6-7. On petition for review, the appellant challenges virtually all of the administrative judge's findings and conclusions. PFR File, Tab 4.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶4      Regarding the conduct unbecoming charge, the appellant argues that he had an "official purpose" to ask dispatch to run Officer E.R.'s motorcycle license plate information through CLETS. *Id.* at 11-17. To support this argument, the appellant makes the following assertions, among others: (1) there is no section of the CLETS statutes discussed in the proposal letter, decision letter, or initial decision; (2) there is no description of "official purpose" to provide him with notice that he violated a statute, rule, regulation, policy or guideline; (3) he had a "need to know" the information because it was "relevant to his supervision of a

fellow police officer"; and (4) running expired license plates is routine. *Id.* at 12−14. He also challenges many of the administrative judge's factual findings and credibility determinations. *Id.* at 11-17. For the following reasons, we find that these arguments are not persuasive.

¶5    A charge of "conduct unbecoming" has no specific elements of proof; it is established by proving that the employee committed the acts alleged in support of the broad label. *Canada v. Department of Homeland Security*, 113 M.S.P.R. 509, ¶ 9 (2010). Moreover, nothing in law or regulation requires an agency to affix a label to a charge of misconduct; an agency may simply describe actions that constitute misbehavior in narrative form and have its discipline sustained if the efficiency of the service suffers because of the misconduct. *Otero v. U.S. Postal Service*, 73 M.S.P.R. 198, 202 (1997). Because the agency charged the appellant with conduct unbecoming—and did not charge him with violating a specific CLETS provision or a statute, regulation, or rule—the agency had no obligation to prove, let alone discuss, any such provisions in the proposal or decision letters.

¶6    We have considered the appellant's contention that license plate inquiries are routine and there were requests for vehicle license plate information for three other officers. PFR File, Tab 4 at 13. We conclude that these situations are distinguishable. Importantly, the CLETS requests regarding these officers' vehicles appear to involve allegations of criminal activity or other observed improprieties when the officers' vehicles were on the agency installation. *See, e.g.*, HT I at 83, 120; HT II at 460-65; HT III at 621. By contrast, the administrative judge credited Officer E.R.'s testimony that he did not tell the appellant that his motorcycle had been stolen and the appellant told him to tell agency officials that his motorcycle was on the agency installation. ID at 5, 19−22 (citing *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987) (explaining the factors that an administrative judge could consider when making credibility determinations)); HT I at 187; IAF, Tab 9, Subtab 4H at 35. The

Board must give deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on observing the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002). The appellant has not identified such reasons. Having affirmed the administrative judge's credibility determinations and her implicit finding that the motorcycle was not stolen or on the agency installation, we discern no error with her conclusion that the appellant did not have an official purpose when he asked for CLETS information on Officer E.R.'s motorcycle. ID at 5, 19-22. Additionally, the record reflects that, prior to the events at issue in this appeal, the appellant signed a form entitled "Employee/Volunteer Statement Form, Use of CLETS Criminal Justice Information and Department of Motor Vehicles Record Information," which states that access to CLETS is based on a "right to know" or a "need to know" and misuse of such information may, among other things, violate the law and/or CLETS policy. IAF, Tab 9, Subtab 4H at 48. Based on the administrative judge's findings and determinations, we further conclude that the appellant did not have a "right to know" or a "need to know" the registration status of Officer E.R.'s motorcycle. PFR File, Tab 4 at 13-14.

¶7       The appellant also challenges the administrative judge's conclusion that his contact to dispatch on January 1, 2013, at 2:19 p.m. was "more clandestine" because his language suggested he was conducting an area check and came upon the motorcycle in question. *Id.* at 16-17; ID at 20.[2] This radio transmission was played during the hearing. According to the hearing transcript, instead of asking for a license plate check for Officer E.R.'s motorcycle, the appellant requested an

---

[2] The proposal notice described two of the appellant's contacts with dispatch on January 1, 2013. IAF, Tab 9, Subtab 4G at 1; IAF, Tab 17, Exhibit 4 at 2. Because the administrative judge only used the term "more clandestine" to describe the 2:19 p.m. contact with dispatch, we only discuss that contact in our analysis.

"area 4 check" for a "California plate," "[s]ome motorcycles" and "[s]howing 2007." HT I at 32-37. The administrative judge, having had an opportunity to hear the radio transmission, analyze witness demeanor, and make credibility determinations, concluded that the appellant's language during this contact with dispatch "gave the impression that he was observing a nondescript motorcycle on agency premises" and intended to give a false impression to the dispatcher. ID at 20-21. We discern no error with her conclusion in this regard. *See Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 105-06 (1997) (finding no reason to disturb the administrative judge's findings when she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions); *Broughton v. Department of Health & Human Services*, 33 M.S.P.R. 357, 359 (1987) (same).

¶8     We have also considered the appellant's assertion that there is no record linking his contact with dispatch at 11:41 a.m. on January 1, 2013, to Officer E.R.'s license plate except that the dispatcher placed Officer E.R.'s subsequent request for the same information "under the same call sign." PFR File, Tab 1 at 16-17. The administrative judge did not credit the appellant's testimony that he did not remember contacting dispatch for a CLETS check that morning because it was contrary to the "contemporaneously created" daily dispatch journal[3] in which the contact was recorded. ID at 7 n.5 (citing *Hillen*, 35 M.S.P.R. at 458); HT III at 640. Here, too, the appellant does not provide any reasons to overturn the administrative judge's finding.[4]

---

[3] The journal was described as a record of "every action that the officers do throughout their shift." HT I at 31.

[4] We note that when presented with the daily dispatch journal, the appellant admitted on cross examination that he called dispatch at 11:41 a.m. to ask if CLETS was up. HT III at 712. We find it inherently improbable that he contacted dispatch at 11:41 a.m. for a CLETS check, and the only subsequent contact that he had with dispatch that day was the 2:19 p.m. contact requesting a CLETS check on Officer E.R.'s motorcycle license plate, but these two contacts were not related. *See Hillen*, 35 M.S.P.R. at 458 (explaining that, to resolve credibility issues, an important factor to consider is the inherent improbability of the witness's version of events).

¶9        The appellant next contends that the administrative judge erred when she concluded that the daily dispatch journal reported that "the plate was expired, was not recognized as a Permit of Non-Operation (PNO) off-road bike,[] and the inquiry was flagged as indicative of misuse of the system."  PFR File, Tab 4 at 16; ID at 21 (citing IAF, Tab 9, Subtab 4H at 49).  We agree with the appellant that the page cited by the administrative judge does not reflect this proposition.  However, this error is not prejudicial to the appellant's substantive rights and provides no basis for reversal of the initial decision.  *Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984).  The record reflects that a CLETS request on January 1, 2013, at 12:51 p.m.[5] showed that there was a valid PNO from April 26, 2010, the vehicle was registered to Officer E.R., and the PNO registration was deferred.  IAF, Tab 9, Subtab 4H at 46.  Moreover, it appears that this series of license plate checks by both the appellant and Officer E.R. over a short period of time involving the same motorcycle led dispatchers to be concerned about a CLETS violation, which ultimately led to the agency's investigation and the appellant's removal.  *Id.* at 43; HT I at 17-20, 23-26.  We have considered the appellant's remaining arguments regarding the conduct unbecoming charge, but we conclude that they do not warrant a different outcome.

¶10       Regarding the making false statements charge, the appellant argues that he did not act with deceptive intent and appears to challenge the administrative judge's credibility determinations.  PFR File, Tab 4 at 20-21; ID at 23-29.  We find, however, that the administrative judge identified the correct legal standard for evaluating this charge, reviewed the relevant evidence, made proper credibility determinations, and correctly concluded that the agency proved that the appellant made three false statements during the interview with the Deputy Chief of Police.  ID at 23-29.  The appellant has not offered any persuasive

---

[5] This contact was Officer E.R.'s CLETS request regarding his own motorcycle.  HT I at 30.

evidence or argument to undermine the administrative judge's credibility determinations or her conclusion that the agency proved this charge, and we affirm her analysis. *See Haebe*, 288 F.3d at 1301; *Crosby*, 74 M.S.P.R. at 105-06; *Broughton*, 33 M.S.P.R. at 359.

¶11 Having affirmed the charges, we now turn to the appellant's arguments relating to his claims and defenses. Regarding the claim of reprisal for whistleblowing activity, the administrative judge determined that a disclosure of fraudulent training records, if true, constituted a reasonable belief of a violation of law and that the deciding official had no knowledge of any such disclosure. ID at 47-49 & n.36.[6] The administrative judge "closely observed" the testimony of the Chief of Police (who was also the proposing official) to whom the alleged disclosure was made. ID at 48, 51. She found that the Chief of Police was "clear, concise, consistent[,] and forthright" in his recollection of his conversation with the appellant, she concluded that he had no knowledge of the disclosure and that the appellant did not prove that he made a protected disclosure to him. ID at 49–51. Even if the Chief of Police had such knowledge, the administrative judge found that the nearly 33 months between the disclosure and March 2013 notice of proposed removal was too attenuated to satisfy the contributing factor requirement. ID at 51-52. The administrative judge also considered whether the appellant presented other evidence that would tend to show that his disclosure was a contributing factor in his removal, but she concluded that he presented no circumstantial evidence to satisfy the contributing factor requirement. ID at 52–53. The administrative judge noted in the alternative that, even if the appellant proved contributing factor, the agency proved by clear and convincing evidence that it would have taken the same action absent the disclosure. ID at 53 n.40.

---

[6] The appellant does not appear to challenge these conclusions on review, and we affirm them.

¶12     We modify the initial decision to discuss the administrative judge's contributing factor analysis. The appellant must prove by preponderant evidence that he made a protected disclosure or engaged in protected activity that was a contributing factor in a personnel action taken against him. 5 U.S.C. § 1221(e)(1); *Ayers v. Department of the Army*, 123 M.S.P.R. 11, ¶ 12 (2015).[7] The knowledge/timing test allows an employee to demonstrate that the disclosure was a contributing factor in a personnel action through circumstantial evidence, such as evidence that the official taking the personnel action knew of the disclosure and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action. *Carey v. Department of Veterans Affairs*, 93 M.S.P.R. 676, ¶ 11 (2003); *see* 5 U.S.C. § 1221(e)(1). Other evidence, such as that pertaining to the strength or weakness of the agency's reasons for taking the personnel action, whether the whistleblowing was personally directed at the proposing or deciding officials, and whether these individuals had a desire or motive to retaliate against the appellant, may be relevant to the contributing factor analysis. *Powers v. Department of the Navy*, 69 M.S.P.R. 150, 156 (1995). If the appellant makes out a prima facie case of whistleblowing reprisal, then the burden of persuasion shifts to the agency to prove by clear and convincing evidence that it would have taken the same personnel action in the absence of the protected activity. 5 U.S.C. § 1221(e)(2); *Ayers*, 123 M.S.P.R. 11, ¶ 12.

¶13     Although not raised by the appellant on review, the evidence suggests that the appellant's conversation with the Chief of Police—during which the alleged disclosure was made—occurred in late June or early July 2011, not June 2010, as the administrative judge stated in the initial decision. *Compare* HT III at 517-18,

---

[7] The appellant's removal was proposed and effected after the December 27, 2012 effective date of the Whistleblower Protection Enhancement Act of 2012. Pub. L. No. 112-199, § 202, 126 Stat. 1465, 1476. Thus, we have analyzed the appellant's claim under this standard.

600-02, *with* ID at 51-52. Thus, for evaluating the timing component of the knowledge/timing test, there was only an approximately 21-month delay between the disclosure and the proposed removal. The Board has held that a personnel action taken within approximately 1 to 2 years of the appellant's disclosures satisfies the knowledge/timing test. *Mastrullo v. Department of Labor*, 123 M.S.P.R. 110, ¶ 21 (2015); *see Redschlag v. Department of the Army*, 89 M.S.P.R. 589, ¶ 87 (2001) (finding that the appellant's disclosures were a contributing factor in her removal when they were made approximately 21 months and then slightly over a year before the agency removed her). Accordingly, we vacate the administrative judge's discussion of the timing component of the knowledge/timing test. However, the administrative judge's error does not prejudice the appellant's substantive rights or provide a basis to reverse the initial decision, *see Panter*, 22 M.S.P.R. at 282, because she observed the Chief of Police's demeanor during the hearing, and she credited his testimony that he had no knowledge of the disclosure, ID at 49-51. The appellant has not persuaded us that this finding was in error. *Haebe*, 288 F.3d at 1301. Therefore, we find that the appellant did not prove the knowledge component of the knowledge/timing test.

¶14    We alternatively have considered the appellant's assertion that the agency's actions in removing him based on a routine inquiry regarding an expired license plate and its failure to rebut his testimony by producing relevant training records constitutes "evidence by omission" that he reported the falsification of training records and the agency "harbored malice towards [him] and looked for a reason to terminate him." PFR File, Tab 4 at 22. This argument is unavailing. As discussed above, it appears that CLETS requests regarding other officers' vehicles are only conducted in certain circumstances not applicable here, and there is scant evidence that the agency harbored any malice toward the appellant or looked for a reason to terminate him. Notably, the proposing official promoted the appellant to the sergeant position, authorized two of his performance awards,

and certified that he was fully successful in meeting his performance standards, which would weigh against finding that the proposing official had a motive to retaliate. ID at 53; HT III at 519, 746-47; IAF, Tab 9, Subtab 4G at 3; *see Powers*, 69 M.S.P.R. at 156. Moreover, we agree with the administrative judge that the agency's reasons for taking the action were strong, neither the proposing nor deciding officials were the subject of the disclosure, and there was no evidence that tended to show that either official was motivated to protect the individual whom the appellant believed had falsified the training records. ID at 52-53. The appellant has not identified, and we are not aware of, any other persuasive evidence regarding contributing factor. Because we find that the appellant did not meet his burden to prove contributing factor by preponderant evidence, we need not consider his contention that the agency failed to prove by clear and convincing evidence that it would have taken the same action absent his disclosure. PFR File, Tab 4 at 22; *see Clarke v. Department of Veterans Affairs*, 121 M.S.P.R. 154, ¶ 19 n.10 (2014) (stating that, under the Whistleblower Protection Enhancement Act of 2012, the Board may not proceed to the clear and convincing evidence test unless it has first determined that the appellant established his prima facie case), *aff'd*, 623 F. App'x 1016 (Fed. Cir. 2015). Accordingly, we vacate the administrative judge's clear and convincing analysis in the initial decision. ID at 53 n.40.

¶15      On review, the appellant reiterates his assertion that the deciding official's decision to re-interview multiple witnesses after hearing his reply and adding numerous additional charges constitute due process violations. PFR File, Tab 4 at 6-11. Procedural due process guarantees are not met if the employee has notice of only certain charges or portions of the evidence and the deciding official considers new and material information; therefore, it is constitutionally impermissible to allow a deciding official to receive additional material information that may undermine the objectivity required to protect the fairness of the process. *Stone v. Federal Deposit Insurance Corporation*, 179 F.3d 1368,

1376 (Fed. Cir. 1999). Not every ex parte communication is a procedural defect so substantial and so likely to cause prejudice that it undermines the due process guarantee and entitles the claimant to an entirely new administrative proceeding; rather, only ex parte communications that introduce new and material information to the deciding official will violate the due process guarantee of notice. *Id.* Our reviewing court has held that there is no constitutionally relevant distinction between ex parte communications relating to the underlying charge and those relating to the penalty. *Ward v. U.S. Postal Service*, 634 F.3d 1274, 1280 (Fed. Cir. 2011). Thus, when an agency intends to rely on aggravating factors as the basis for imposing a penalty, such factors should be included in the advance notice of adverse action so that the employee will have a fair opportunity to respond to those factors before the deciding official. *Lopes v. Department of the Navy*, 116 M.S.P.R. 470, ¶ 5 (2011).

¶16        In the initial decision, the administrative judge summarized and evaluated each of the ex parte communications between the deciding official and other individuals and concluded that none introduced new or material information. ID at 31-37. Importantly, the administrative judge found that the deciding official was "generally open, thoughtful, forthright[,] and lacking any evidence of guile," and she credited his testimony that he did not consider any new or material evidence gained through ex parte means. ID at 36-37. The appellant has not identified any sufficiently sound reasons to overturn the administrative judge's findings or conclusions. *Haebe*, 288 F.3d at 1301. To the contrary, the record reflects that the administrative judge considered the evidence as a whole, drew appropriate inferences, made reasoned conclusions on the issue of credibility, and determined that the deciding official did not receive any new and material information. ID at 31-37; *Crosby*, 74 M.S.P.R. at 105-06; *Broughton*, 33 M.S.P.R. at 359. We therefore affirm her determination in this regard. *See, e.g.*, *Blank v. Department of the Army*, 247 F.3d 1225, 1229-30 (Fed. Cir. 2001) (holding that a deciding official's decision to subsequently interview various

agency employees merely to confirm and clarify information that already was contained in the record did not constitute a due process violation).

¶17    The appellant also asserts that the deciding official considered "additional charges" and aggravating factors for which he had no prior notice. PFR File, Tab 4 at 6-11. As an example of an additional charge, he cites the deciding official's observation that he "did not initiate a blotter report." *Id.* at 11.[8] However, the record reflects that the deciding official's statement was in direct response to the appellant's explanation that he was conducting a preliminary investigation into a possible stolen motorcycle. IAF, Tab 9, Subtab 4D at 6-7, 12-13. A deciding official does not violate an employee's right to due process when he considers issues raised by an employee in his response to the proposed adverse action and then rejects those arguments in reaching a decision. *Mathis v. Department of State*, 122 M.S.P.R. 507, ¶ 9 (2015).

¶18    The appellant further asserts that "misuse of CLETS" is not in the proposal notice. PFR File, Tab 4 at 9. Contrary to this assertion, the proposal notice specifically mentions the phrase "misuse of CLETS" in the narrative section of the making false statements charge and in the discussion of the seriousness of the offenses. IAF, Tab 9, Subtab 4G at 1-2. Thus, the deciding official's reference to "misuse of CLETS" in the decision letter is not new information. *Id.*, Subtab 4D at 12-13.[9]

---

[8] A "blotter report" is "a summary of pertinent incidents that have occurred throughout the day." HT I at 31; IAF, Tab 9, Subtab 4D at 2 ("All crimes or incidents that are reported generate a blotter entry and report number.").

[9] The appellant also states that the administrative judge improperly relied on "misuse of CLETS" in her nexus discussion. PFR File, Tab 4 at 9; ID at 54. The nexus requirement, for purposes of whether an agency has shown that its action promotes the efficiency of the service, means there must be a clear and direct relationship between the articulated grounds for an adverse action and either the employee's ability to accomplish his duties satisfactorily or some other legitimate Government interest. *Merritt v. Department of Justice*, 6 M.S.P.R. 585, 596 (1981), *modified*, *Kruger v. Department of Justice*, 32 M.S.P.R. 71, 75 n.2 (1987). We discern no error with the administrative judge's including the potential consequences of the agency's "misuse of

¶19     The appellant also alleges that the deciding official considered aggravating factors in his penalty determination, such as the threat of "CLETS being revoked"; that he took the actions for "personal gain"; and that the offenses were "intentional and maliciously committed." PFR File, Tab 4 at 6, 10-11; IAF, Tab 9, Subtab 4D at 13. The deciding official's discussion of these issues arose in his penalty analysis concerning the nature and seriousness of the offenses, often viewed as "the most important factor" for consideration under *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981). IAF, Tab 9, Subtab 4D at 13; *Williams v. Government Printing Office*, 7 M.S.P.R. 183, 185 (1981). In *Douglas*, 5 M.S.P.R. at 305, the Board explained that this factor encompasses the relation between the offenses and the employee's duties, position, and responsibilities, including whether the offense was intentional or technical or inadvertent, or was committed maliciously or for gain, or was frequently repeated.

¶20     Regarding "CLETS being revoked," the administrative judge noted that the proposing official stated that the agency must have law enforcement officers who "understand and abide by the CLETS system" and found that the deciding official's discussion of the consequences of the loss of use of the CLETS system was proper because it "emphasized the seriousness of the offense relative to the appellant's duties and responsibilities." ID at 57-58. We agree.

¶21     Regarding the deciding official's considering the other terms, the proposal notice does not specifically mention the phrases "[for] personal gain," "intentional," or "committed maliciously," but it does use the term "deliberate" to describe the appellant's actions, and it discussed at length the seriousness of the offenses. IAF, Tab 9, Subtab 4G at 2. We find that the discussion in the proposal letter put the appellant on notice that the nature and seriousness of the offenses would be considered by the deciding official. Moreover, the appellant has not

CLETS" in her nexus discussion, particularly because it was referenced in both the proposal and decision letters.

identified, and we are not aware of, any new and material information that the deciding official considered relating to his analysis of the charges or penalty but did not disclose to the appellant.

¶22    Finally, the appellant's reliance on an initial decision in *Brown v. Department of Defense*, MSPB Docket No. SF-0752-14-0310-I-1, Initial Decision (Feb. 15, 2015), PFR File, Tab 4 at 11, is not persuasive because initial decisions are of no precedential value and cannot be cited or relied on as controlling authority, *Rockwell v. Department of Commerce*, 39 M.S.P.R. 217, 222 (1988).  We have considered the appellant's remaining arguments regarding due process, but we find them unavailing.  We therefore affirm the administrative judge's conclusion that the agency did not violate the appellant's due process rights.

¶23    The appellant also asserts on review that the deciding official's ex parte communications and consideration of additional charges and aggravating factors violates 5 C.F.R. § 752.404(g), which states that the agency "will consider only the reasons specified in the notice of proposed action and any answer of the employee or his or her representative, or both made to a designated official." PFR File, Tab 4 at 6, 8.  We interpret this language as a claim of harmful procedural error.  *See* 5 U.S.C. § 7701(c)(2)(A) (stating that an agency action may not be sustained if the employee shows harmful error in the agency's applying its own procedures in making its decision); *see also Ward*, 634 F.3d at 1281-82.  In the initial decision, the administrative judge noted the appellant failed to show that an "unlawful" ex parte communication occurred and also failed to show that a different outcome would have been likely had the material not been considered.  ID at 37 n.22.  We discern no error with this conclusion. *See Stephen v. Department of the Air Force*, 47 M.S.P.R. 672, 681, 685 (1991) (explaining that an agency error is harmful only when the record shows that the procedural error was likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error).

¶24    We further modify the initial decision to discuss the appellant's claim of harmful procedural error related to the administrative judge's considering additional charges or aggravating factors, such as the threat of "CLETS being revoked" and that the offenses were "intentional and committed maliciously," among others. Even if we assume without finding that the deciding official erroneously considered such information, the appellant has not proven that a different outcome would have resulted in the absence of the error. *See, e.g.*, *Bryant v. Department of the Army*, 84 M.S.P.R. 202, ¶ 15 (1999) (finding that even if the agency improperly considered certain factors, such error was not harmful because the nature of the appellant's misconduct was so serious as to warrant removal, even absent consideration of the cited factors), *aff'd*, 243 F.3d 559 (Fed. Cir. 2000) (Table). Because we find that the appellant failed to prove that the agency violated his due process rights or committed harmful procedural error, we need not determine whether the administrative judge erred by finding that the deciding official was not limited to the language in the proposing official's *Douglas* factors assessment. PFR File, Tab 4 at 8; ID at 57.

¶25    We also have considered as a claim of harmful procedural error the appellant's contention that his right to representation during an investigative interview was violated. PFR File, Tab 4 at 24-25; IAF, Tab 24.[10] The administrative judge evaluated the relevant evidence in the initial decision. ID at 37-40. She assumed without finding that there was error in the manner in which the Deputy Chief of Police asked the appellant questions, the limits that he placed on his representatives' participation in the investigatory interview, and his refusal to allow the appellant to tape record the interview. ID at 40. She

---

[10] The appellant repeatedly cites to *National Labor Relations Board v. Weingarten*, 420 U.S. 251 (1975), in support of his assertion that his right to representation was violated. PFR File, Tab 4 at 24-25. Although *Weingarten* does not per se apply to Federal employees, Congress granted Federal employees *Weingarten*-type rights in the Civil Service Reform Act. 5 U.S.C. § 7114(a)(2)(B); *Lim v. Department of Agriculture*, 10 M.S.P.R. 129, 130-31 (1982).

concluded, however, that any error was harmless because it would not have changed the appellant's responses to the questions that comprised the making false statements charge. *Id.* The appellant's petition for review challenges the administrative judge's analysis and generally asserts that these errors "denied [him] the opportunity to elicit favorable facts," which resulted in "false charges" being brought against him. PFR File, Tab 4 at 24-25. However, this generalized assertion does not satisfy his burden to prove by preponderant evidence that the procedural error was likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error. *Stephen*, 47 M.S.P.R. at 681, 685; 5 C.F.R. § 1201.56(B)(2)(i)(C). We therefore affirm the administrative judge's decision in this regard.

¶26    Finally, the appellant reasserts on review his age discrimination claim, PFR File, Tab 4 at 22-24, but we find no error with the administrative judge's analysis of this claim. In the initial decision, the administrative judge identified the legal standards set forth in *Wingate v. U.S. Postal Service*, 118 M.S.P.R. 566 (2012), and *Savage v. Department of the Army*, 122 M.S.P.R. 613 (2015),[11] discussed various methods of direct and circumstantial evidence, evaluated comparator evidence (including comparing the appellant with Officer E.R.), and concluded that the appellant did not prove his age discrimination claim. ID at 41−46. When the administrative judge issued the initial decision, she did not have the benefit of the Board's recent decision in *Gardner v. Department of Veterans Affairs*, 123 M.S.P.R. 647 (2016).[12] In *Gardner*, the Board clarified that *Savage* does not require administrative judges to separate "direct" from "indirect"

---

[11] Although *Savage* involved allegations of race and sex discrimination and retaliation for protected equal employment opportunity (EEO) activity, the Board discussed analogous provisions from the Age Discrimination in Employment Act in concluding that 42 U.S.C. § 2000e-16 is violated when discrimination or retaliation is a motivating factor in the contested personnel action. *Id.*, ¶¶ 35-41.

[12] *Gardner* involved allegations of race, sex, and disability discrimination as well as retaliation for protected EEO activity. *Id.*, ¶¶ 7, 27.

evidence; rather, the Board reaffirmed its holding in *Savage* that the dispositive inquiry is whether the appellant has shown by preponderant evidence that the prohibited consideration was a motivating factor in the contested personnel action. *Id.*, ¶ 30; *Savage*, 122 M.S.P.R. 613, ¶ 51.

¶27 Here, as in *Gardner*, 123 M.S.P.R. 647, ¶ 31, the administrative judge discussed the distinction between direct and circumstantial evidence, but there is no allegation that she disregarded any evidence because it was not direct or circumstantial. Moreover, we find that the administrative judge properly considered the documentary and testimonial evidence as a whole. *Id.* Accordingly, we affirm her conclusion that the appellant did not prove this affirmative defense.

¶28 We have considered the appellant's remaining arguments but we conclude that a different outcome is not warranted. Accordingly, we affirm the agency's decision to remove the appellant based on the sustained misconduct.

### NOTICE TO THE APPELLANT REGARDING YOUR FURTHER REVIEW RIGHTS

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You have the right to request further review of this final decision. There are several options for further review set forth in the paragraphs below. You may choose only one of these options, and once you elect to pursue one of the avenues of review set forth below, you may be precluded from pursuing any other avenue of review.

Discrimination Claims:  Administrative Review

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC). Title 5 of the United States Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)). If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission

P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time.

Discrimination and Other Claims:  Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate U.S. district court. *See* 5 U.S.C. § 7703(b)(2).  You must file your civil action with the district court no later than 30 calendar days after your receipt of this order.  If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court‑appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f); 29 U.S.C. § 794a.

Other Claims:  Judicial Review

If you want to request review of the Board's decision concerning your claims of prohibited personnel practices described in 5 U.S.C. § 2302(b)(8), (b)(9)(A)(i), (b)(9)(B), (b)(9)(C), or (b)(9)(D), but you do not want to challenge the Board's disposition of any other claims of prohibited personnel practices, you may request review of this final decision by the U.S. Court of Appeals for the Federal Circuit or by any court of appeals of competent jurisdiction.  The court of appeals must receive your petition for review within 60 days after the date of this order.  *See* 5 U.S.C. § 7703(b)(1)(B)  (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right.  It is found in title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012).  You may read this law and other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode/htm.  Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.  Additional information about other courts of appeals can be found at their respective websites, which can be accessed through the link below:
http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The

Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD:                 _____
                                            Jennifer Everling
                                            Acting Clerk of the Board

Washington, D.C.